242 P.3d 735 (2010)
238 Or. App. 535
STATE of Oregon, Plaintiff-Respondent,
v.
Darren Lee-Elmer HIATT, aka Darren Elmer Hiatt, aka Darren Lee Hiatt, Defendant-Appellant.
08CR0763; A140811.
Court of Appeals of Oregon.
Submitted July 29, 2010.
Decided November 10, 2010.
*736 Peter Gartlan, Chief Defender, and Elizabeth Corbridge Ranweiler, Deputy Public Defender, Appellate Division, Office of Public Defense Services, filed the brief for appellant.
John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Michael Washington, Sr., Assistant Attorney General, filed the brief for respondent.
Before HASELTON, Presiding Judge, and BREWER, Chief Judge, and ARMSTRONG, Judge.
ARMSTRONG, J.
Defendant pleaded guilty to first-degree theft, ORS 164.055. The trial court sentenced defendant to 18 months of probation on the theft conviction and, pursuant to ORS 137.106, ordered him to pay restitution in the amount of $134,744.40 to the victim of the theft. On appeal, defendant contends that the court erred by using the cost to replace the stolen property as the measure of the victim's economic damages, rather than using the price at which the property would have sold had the victim disposed of the property by sale. However, defendant did not preserve the purported error below, and, accordingly, we affirm.
Defendant lived with his grandmother and her boyfriend, Pennie, for a number of years. Pennie had a collection of rare and valuable coins and other currency. He noticed that a significant portion of his collection had disappeared, and he reported the loss to the police. Defendant was questioned about the missing coins and admitted that he and a friend had taken them. Some of the stolen coins were returned to Pennie, but the balance was not. Defendant was charged with first-degree theft for the theft of the coins, and he pleaded guilty to the charge.
The court held a hearing to determine the amount of restitution to award to Pennie as part of defendant's sentence.[1] In the state's opening statement, it indicated that "[t]he issues here at the restitution hearing are largely just going to be the value of the collectible coins that were taken from the victim in this case." Two collectible coin dealers testified about the missing coins and their value, including the likely grade and condition of the coins, the industry standard by which to determine their retail value, and their wholesale value.
After considering the evidence, the court questioned the state about the standard to use to determine the amount of restitution under ORS 137.106. The court said, "You're saying that replacement value is the appropriate standard in a case like this * * *?" The state responded affirmatively and further argued that the retail value of the coins is "the amount of the cost that it would take for Mr. Pennie to * * * rebuild this collection[.]" The state concluded that "the value of [Pennie's] economic loss [is] what it would cost him to replace [the] property that he's lost."
The court asked defendant to "[g]ive me some cases that [support] your position * * * [that I should not] use the replacement value." Defendant proceeded to identify credibility issues with the state's expert, *737 among other factual issues, eventually arguing that,
"[a]s to the wholesale issue, * * * we have essentially * * * a range of both [the state's expert] and [defendant's expert]. But the key is what value is the Court going to establish? If the Court was to consider wholesale value as the standard of restitution to the victim, the issue becomes what is the basic retail value [that the wholesale discount should be based on]?"
Having heard both parties' arguments, the court concluded that Pennie had suffered economic damages and was entitled to restitution. As to the amount, the court stated:
"What I'm struggling with is I understand retail and I understand wholesale. Sometimes the value ends up to be a number in between. And * * * there's enough evidence [about] what the retail value is, [$149,716]. If I took twenty percent off that, that would give us a wholesale number. But is the wholesale number the economic damage or is it something in between the two numbers?"
The court ultimately determined Pennie's economic damage to be the retail value of the coins less a 10 percent discount, thus splitting the difference between the retail and wholesale value of the coins.
In response to that decision, the following exchange occurred:
"[DEFENSE COUNSEL:] I would like to have an objection to the decision to take the retail and wholesale numbers and [use] a number in between, the ten percent.
"[COURT:] Do you want to use the retail figure?
"[DEFENSE COUNSEL:] I would ask, Your Honor, to use the wholesale figure.
"* * * * *
"[DEFENSE COUNSEL:] [O]ur objection is that * * * it's an arbitrary decision * * * to split the difference[.]
"[COURT:] I'm prepared to choose one of the two figures if you want me to.
"* * * * *
"[COURT:] If you want me to remedy that, I'm perfectly willing to order the full amount."
The trial court proceeded to explain the reasoning behind its decision to split the difference between the wholesale and retail value of the coins. After hearing that explanation, defendant withdrew his objection.
Generally, we will consider an issue on appeal only if it has been preserved in the trial court. ORAP 5.45(1); State v. Wyatt, 331 Or. 335, 341, 15 P.3d 22 (2000). To preserve an issue for appeal, a party must provide the trial court with the basis for the party's objection with enough specificity to "ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." Wyatt, 331 Or. at 343, 15 P.3d 22.
Here, although the state concedes that defendant preserved the alleged error in the court's decision on the amount of the victim's damages, we have an independent obligation to determine whether the error was preserved. Cf. id. at 346, 15 P.3d 22 (concluding that appellate courts may only review unpreserved errors that are apparent on the face of the record). During the hearing, the trial court attempted to determine the market value of Pennie's stolen coins in light of the evidence that the parties had presented about the retail and wholesale value of the coins. The state argued for the retail value, because that amount reflected the cost that Pennie would have to pay to replace the collection. Defendant merely proposed the lower amount, the wholesale value, without offering a principled reason to support his argument for that amount. The trial court determined the value of the coins, and, hence, the economic damage to the victim for their loss, to be an amount between the retail and the wholesale value of them. In response, defendant made an objection to the court's valuation decision, arguing that it was arbitrary. But, after being presented with the court's reasoning, defendant withdrew his objection. Defendant now argues that the measure of the victim's damage for the loss of the coins is the price at which the coins would have been sold if the victim had disposed of them by sale, which defendant contends, in this case, is the wholesale price. *738 Even if defendant's request to the trial court to use wholesale value would otherwise have preserved that issue, defendant's decision to withdraw his objection to the court's decision on damages forecloses our review of it.
Affirmed.
NOTES
[1] If a criminal act causes a victim to suffer economic damages, the court must enter a judgment in the criminal case against the defendant convicted of that act that requires the defendant to pay restitution to the victim in the full amount of the victim's economic damages, unless the victim consents to an award of less than the full amount of the damages. ORS 137.106(1). ORS 137.103(2) provides, in part, that "`[e]conomic damages' * * * [h]as the meaning given that term in ORS 31.710[.]" ORS 31.710(2)(a), in turn, defines economic damages as monetary losses that are objectively verifiable.